UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| v. | : Crim. No. 23-CR-26 (RCL) |
| ANTHONY ANTWON MCNAIR, JR. | : |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW Defendant, Anthony Antwon McNair, Jr., through undersigned counsel, Stephen F. Brennwald, Brennwald & Robertson, and submits the following sentencing memorandum to assist the Court in fashioning an appropriate sentence in this case. Specifically, Mr. McNair asks this Court to sentence him to 273 months in prison followed by an appropriate term of supervised release.[1]

*Procedural Background*

Anthony Antwon McNair, Jr. was indicted, along with co-defendants William Brock and Erin Sheffey, in connection with armed robberies of Brinks armored trucks.

All three men were accused of having conspired to interfere with interstate commerce by robbery. In addition, Mr. Brock was accused of masterminding three such robberies. Mr. McNair was accused of having participated in two of those robberies (and master-minding none), and Mr. Sheffey was charged in one of the events.

A jury convicted all three men of conspiracy. Mr. Brock was also convicted of offenses related to each of the three armed robberies with which he was charged. Mr. McNair was convicted of participating in two of the armed robberies, but Mr. Sheffey

---

[1] That number – 273 months – is the average length of imprisonment imposed in comparable cases under the sentencing guidelines. PSR at §140.

was acquitted of specific charges relating to the lone armed robbery with which he was charged.

On January 15, 2025, Mr. Sheffey was sentenced to 220 months in prison followed by thirty-six months of supervised release.

Mr. Brock and Mr. McNair are scheduled to be sentenced on March 25, 2025.

*Factual Background*

As noted, a jury found Mr. McNair guilty of Conspiracy to Interfere with Interstate Commerce by Robbery. It also convicted him of two counts of Interference with Interstate Commerce by Robbery, one count of Bank Robbery, and two counts of Using, Carrying, Possessing, or Brandishing a Firearm During and in Relation to a Crime of Violence.

While the defendant denies his guilt, he agrees that the information presented in paragraphs 15-19 of the Presentence Investigation Report partially summarizes the evidence presented by the government at trial. What the paragraphs don't disclose is that the government's main witness, Raheem Gafari, testified about the events in question pursuant to a cooperation agreement. The defendant submits that Mr. Gafari testified falsely throughout a great portion of his testimony.

Moreover, Mr. Gafari, who killed one person in cold blood and almost certainly killed a second person the very next day (the person who witnessed him kill his first victim), was allowed by the same government that is prosecuting Mr. McNair to plead guilty to a single count of Voluntary Manslaughter While Armed. The plea carries a

guideline range, under the District of Columbia Voluntary Sentencing Guidelines, of 8.5 to 16 years (102 to 192 months).

That sentencing range will certainly be greatly reduced by the sentencing judge because of Mr. Gafari's cooperation in this case. It wouldn't be surprising if Mr. Gafari, who killed one person in cold blood and almost certainly killed the witness to that first murder the very next day, receives a sentence of five years or less. Had he been prosecuted for both killings, he likely would have received sentences totaling at least 70 years.

Instead, rather than a murderer (almost certainly a double-murderer) going to prison for life for killing two people (offenses that, in some states, would carry the death penalty), he will likely be home in a year or less, given the time he has already served. By contrast, Mr. McNair, a man who didn't kill, shoot, stab, or seriously hurt anyone (Mr. McNair is not the one who beat the driver in the December robbery), will spend much of the rest of his life locked up behind bars. Such an outcome shocks the conscience.

### *The Sentencing Guidelines*

Defendant does not dispute the probation office's guidelines calculations. Those calculations conclude that Mr. McNair's guideline range is 168 to 210 months, and that two 7-year sentences must be added to any guideline sentence, to be served consecutively

to each other and to any guideline sentence. The government concurs with that assessment.[2]

In addition, pursuant to 18 U.S.C. 924(c), Mr. McNair must serve two 7-year consecutive sentences. His total sentencing range is, therefore, 336 to 378 months (28 to 31.5 years).

For purposes of comparison, the presentence report notes that "[f]or the 3 defendants (100%) who received a sentence of imprisonment in whole or in part [based on defendants who had the same offense level and criminal history] the average length of imprisonment imposed was 273 month(s) and the median length of imprisonment imposed was 180 month(s)." PSR, at paragraph 140.

These sentences – imposed in cases that are right on point with Mr. McNair's guidelines and criminal history - are significantly lower than the sentencing range relating to this case and are hugely lower than the 480-month sentence the government is requesting.

*The Law*

As this Court knows, pursuant to the *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007), not only are the United States Sentencing Guidelines no longer mandatory, they are not even presumptively reasonable.

As delineated in the statute, the sentence imposed must:

    1) reflect the seriousness of the crime;

---

[2] Defendant objects to the 4-level enhancement for Serious Bodily Injury with respect to the December robbery. As a practical matter, however, removing that enhancement would not change the ultimate sentencing calculation under the Multiple Count formula.

      2) promote respect for the law;

      3) provide just punishment;

      4) deter criminal conduct;

      5) protect the public from further crimes, and

      6) provide the Defendant with any necessary educational or vocational training, medical care, or other correctional treatment.

In addition, this Court must also consider:

      1) the nature and circumstances of the offense;

      2) the history and characteristics of the defendant;

      3) the kinds of sentences available;

      4) the sentencing range;

      5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and

      6) the need to provide restitution to any victims of the offense.

### *Analysis of Sentencing Factors*

***The Proposed Sentence Would Reflect the Seriousness of the Crime, Promote Respect for the Law, Provide Just Punishment, Deter Criminal Conduct, both by Mr. McNair and by Others, and Protect the Public from Further Crimes***

As noted above, Mr. McNair asks this Court to impose a sentence of 273 months of incarceration for his involvement in these two events. This sentence would reflect the seriousness of the crimes as it would keep Mr. McNair in prison for over two decades.

A sentence of that length would also promote respect for the law as anyone who became aware of that type of sentence would not think that it was worth committing these crimes in exchange for spending over twenty years in prison – more than 11 years for each crime committed.

A sentence of 273 months is a significant sentence that will not only keep Mr. McNair in prison for over two decades (and thereby protect the public from further crimes) but also deter others from believing that Mr. McNair's conduct was worth committing.

One must not forget that Mr. Gafari, who implicated Mr. McNair, murdered one person, and almost certainly murdered a second person, but will likely spend a small fraction of the time in jail that Mr. McNair will spend. That is an extreme form of "inverted justice" – 5 years or less for at least one, but likely two, cold-blooded murders, including the murder of a witness, as against over 22 years for two armed robberies.

### *Various Sentencing Enhancements Requested by the Government*

The guideline range, including the mandatory *consecutive* 7-year sentences for each of the 924(c) charges, already takes into account all of the conduct the government points to as a basis for increasing the sentence **well above the top of the guideline range**. This Court should decline the government's extreme request, for the following reasons:

### *Enhancement for Obstruction of Justice*

For instance, while the government vociferously argues that Mr. McNair's sentence should be increased because of his obstruction of justice (threatening two witnesses), the guideline range **already factors in that very conduct**.

Specifically, adding two offense levels for obstruction of justice increases Mr. McNair's sentencing range (not counting the 924(c) charges) from 140-175 months to 168-210 months – an increase of 2 years and four months "on the bottom" to nearly three years at the top of the range. That is very significant amount of time that adequately punishes Mr. McNair for his conduct.

The additional increase requested by the government, using this and other factors to argue for a sentence ***well above the top range*** of the guidelines, would essentially result in double punishment for the conduct relating to this enhancement. This increase is not only unwarranted. It is inappropriate.

### *Enhancement for Causing Bodily Injury*

The government also requests an increase in Mr. McNair's sentence, over and above the top of the guideline range, because of his use of a weapon to cause bodily injury in the October robbery and serious bodily injury in the December robbery.

That argument must fail for two reasons:

First, as the government's own sentencing memorandum clearly demonstrates, Mr. McNair is not the one who hit the complaining witness in the December robbery. There is not even any evidence that Mr. McNair thought another person would do so.

Mr. McNair also never hit the complainant in the October robbery, either with a gun or at all, as the complainant in that case was dragged about two feet by someone after that person struggled for about 10 seconds to take the complainant's gun. But nowhere in the video recording of that incident does one see – as far as counsel can determine – Mr. McNair "beat" the complainant in any way.

The truth of the foregoing is demonstrated in the government's sentencing memorandum. Images included in the memorandum, as well as the narrative presented by the government on pages 2 through 8 and 14, make this absolutely clear.

Second, the guidelines, as calculated, ***already contain an increase*** of two offense levels for the October robbery, and four offense levels for the December robbery even though, again, Mr. McNair did not beat or hit the victim in either robbery.

The two-level enhancement results in the same guideline range increase discussed above relating to the obstruction charge. The four-level enhancement for serious bodily injury, which defendant argues is not even appropriate here, results in an ***increased guideline range of 4 to 5 years*** for this factor alone (from 120-150 months at level 27 to 168-210 months at level 31).

The government's argument, essentially, is that despite this large increase for the alleged infliction of a bodily injury Mr. McNair never inflicted, it is still not enough to account for the severity of this factor. That is simply not the case. Serving four to five years in prison for hitting someone with a gun (again, the government concedes that it was the co-defendant who committed this act) is a very long period of punishment that does not need to be increased because it does not sufficiently punish the perpetrator.

One should also keep in mind that the four-level increase provided for in the guidelines covers not only fact patterns such as this one but also others involving extremely serious injuries, such as stabbings, shootings not involving death, causing someone to become comatose, and other much more severe forms of injury.

While the injury suffered by the complainant in the December robbery appears to have been serious, it is nowhere near the level of severity of the types of injuries that this four-level enhancement can encompass.

For that reason, a huge increase in Mr. McNair's sentence as requested by the government (it admits that it is seeking a 25% increase in Mr. McNair's sentence ***beyond the top*** of the sentencing range) is completely inappropriate.

### *Financial Institution Increase*

The guidelines also include an increase in the sentencing range because the funds were those of a financial institution – an odd sentencing quirk given that financial institutions, in contrast to the average person, do not suffer the same type of harm that an average person would suffer as the result of a robbery.[3]

This enhancement increases Mr. McNair's sentencing range by, again, the same amount of months as the other enhancements involving two offense levels. That is more than sufficient to punish Mr. McNair for his conduct.

### *Huge Sentencing Increase Because of 924(c) Convictions*

Defendant notes that the base offense level for robbery, without any enhancements, already creates a guideline range of 63 to 78 months for each of Mr. McNair's two offenses.

---

[3] One can "smell" the influence of expensive lobbyists in this type of enhancement. While most people would believe that stealing money from a poor or middle-class person is much more serious than stealing money from a multi-billion dollar institution, poor and middle-class individuals do not have sophisticated lobbyists at their disposal. This is not to diminish the loss suffered by banks. Despite their often huge size, they are entitled to the protection of the law. But the defendant is already being punished under the base offense level guideline for the robbery of funds. This enhancement punishes him more because the money involved was bank money, rather than the money of a regular and average citizen. That appears "backwards" to counsel.

The 924(c) enhancements add another 84 months of punishment *for each robbery – 168 months (14 years) that must be imposed consecutively to any other sentence*.

The Court must then factor in all of the other enhancements, further increasing the already high sentencing range. At some point, too much becomes too much.

### *Final Sentencing Range*

When one steps back and looks at all of the various enhancements, and the sentencing ranges they produce, it may be easy for some (the government, perhaps) to fail to grasp the significance of the huge numbers all of these offense levels and enhancements produce.

One day in jail is significant punishment. One week is even more significant. One month even more so, and on and on. 480 months, as the government requests, is nearly (or possibly, if Mr. McNair is killed while in prison) a life sentence.

Mr. McNair is 36 years old and will turn 37 in less than five months. His criminal record is not good, and his conduct in this case, as found by the jury, was very serious indeed.

But the government's request for a sentence of 480 months – 40 years – is mind-boggling.

The guidelines were created for a reason. One of those reasons was to ensure that defendants who are similarly situated receive sentences generally in-line with one another. Another reason was to ensure that a judge did not "go off the reservation" and impose sentences wildly beyond that which would be considered reasonable.

Here, Mr. McNair is facing, with all of the enhancements and consecutive sentences, a sentencing range of 336 to 278 months.  The other three defendants in this country who fell in the same category as Mr. McNair (the same offense level and the same criminal history) received, on average, sentences of 273 months.

That sentence, as proposed, would in this case mean that Mr. McNair would spend 11 years and four months in prison ***per robbery***.

That, especially at the age of nearly 37, is a very long time to remain incarcerated.

Moreover, Mr. McNair will almost certainly be housed in a U.S. penitentiary – notoriously dangerous places of confinement.[4]

**"The main difference in danger between serving a sentence in a United States Penitentiary (USP) and a Federal Correctional Institution (FCI) is the level of violence and volatility:**

- **USPs**

**These prisons are the most volatile federal prisons and are known for containing individuals with extensive histories of violence. USPs are characterized by gangs, organized crime, and a heavy concentration of psychotic people… "[5]**

It is not overly dramatic to say that it will not be easy for Mr. McNair to survive in such a setting, given his smaller stature.

In light of the foregoing, defendant submits that a sentence of 273 months is more than sufficient to accomplish the goals of the sentencing statute.

---

[4] When one sees videos of prison riots, prison fights, and other frightening scenes, they almost invariably take place in a penitentiary, rather than an FCI.  The punishment one endures there is much more harsh than one would face in an FCI.  And an FCI presents many more dangers than one would face in a minimum or low security environment.  Other than a so-called "super-max" prison, USP's are the most dangerous places to be incarcerated.

[5] Federalprisontime.com.

### *The Court's Duty to Provide the Defendant with any Necessary Educational or Vocational Training, Medical Care, or Other Correctional Treatment.*

Mr. McNair is 36 years old and will turn 37 on August 8, 2025. He will likely remain in prison until he is at least in his late 50's, if not his 60's.

At that point, if he survives that long in prison, he will not have much life left, given the short life-expectancy of long-serving U.S. inmates.

Nevertheless, he asks that this Court place him in a facility that offers college courses and other educational opportunities. He will inform the Court on his sentencing date of his requested place(s) of incarceration. Either way, of course, the Bureau of Prisons will place him where it wishes, and it will likely be in a very dangerous place indeed.

### *The History and Characteristics of the Defendant*

It is an understatement to say that Mr. McNair's life has been wasted up until this point for reasons that are not entirely clear.

He obviously grew up in a neighborhood filled with drugs and violence, and although his mother was there for him, his influences from a young age were all negative.

The older members of the society he was surrounded by sold drugs, used drugs, robbed people, and generally spent their time getting in trouble.

He was no different, as his record reflects.

Despite this, when counsel meets with Mr. McNair he is not the monster the government portrays him to be. He and counsel have discussed various philosophical issues surrounding life in the streets, and life in general.

He has a kind smile, and a sense of humor. He is not arrogant, proud, boastful or obsessed with money. He has sold drugs to survive and sometimes engaged in robbery.

He, as is often the case, was not always the perpetrator of a crime. As the presentence report notes, he has been shot, stabbed, and otherwise victimized (including being robbed).

His size, especially in a prison setting, makes him extremely vulnerable to violence.

The threats he made while in jail, rather than reflecting strength, show how much fear he had. It would have been much better had he internalized that fear before committing these crimes, and thought long and hard about the consequences he now faces. But such is not the way on the streets, as people often choose to act first, and regret later.

The government states that Mr. McNair is not remorseful. That could not be further from the truth. While he denies his guilt, he feels very badly about the way the victims were treated in this case, as he would not wish that on anyone.

The government also sees Mr. McNair as unredeemable – someone who should be locked away forever, with the key be thrown away for good measure.

And while his past is certainly not commendable in any way, counsel hopes, and believes, that Mr. McNair will develop wisdom as he spends year after year after year in prison. Counsel does not view him as a lost cause. Neither should this Court.

***The Need to Avoid Unwarranted Sentencing Disparities***

This factor has been discussed above and will not be repeated here. Suffice it to say that others who have been similarly situated to Mr. McNair have received, on average, a sentence of 273 months – the same sentence Mr. McNair asks the Court to impose.

*Conclusion*

Mr. McNair saw a lot of violence growing up, including in his own household, as his mother has described to the presentence report writer. When he was not in his physical abode, but out on the streets, Mr. McNair saw even more violence, including gun and knife violence.

His elders, friends and acquaintances were able to purchase clothes, food, and other necessities (and sometimes luxuries) as a result of their crimes, and Mr. McNair became one of them.

He not only sold drugs, but used them as well. He not only robbed, but was robbed as well. He has lived a very difficult life, and faced many obstacles.

It is not an exaggeration to say that Mr. McNair's past has been full of negativity and wrong turns. His future is not yet known, but he has potential, and is motivated to live life differently. He has a lot to give because he is not stupid, and he genuinely wants to do better. It is very sad for him that he has waited until now to realize how precious life is, and how fleeting freedom can be. But counsel has hope for him, and will stick by him going forward. Counsel hopes that Mr. McNair will survive in prison, and avail himself of every educational opportunity he is given. Time will tell…

Respectfully submitted,

/s/

Stephen F. Brennwald, Esq.
Bar No. 398319
Brennwald & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C. 20003
(301) 928-7727
(202) 544-7626 (facsimile)
E-mail: sfbrennwald@cs.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent by ECF, this 23rd day of March, 2025, to all counsel of record.

/s/

Stephen F. Brennwald